# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

PHILLIP RANDALL TILLIE,

        Defendant-Appellant.

UNPUBLISHED
December 4, 2018

No. 340025
Wayne Circuit Court
LC No. 16-009962-01-FH

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

PHILLIP RANDALL TILLIE,

        Defendant-Appellant.

No. 340026
Wayne Circuit Court
LC No. 16-010054-01-FH

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

PHILLIP RANDALL TILLIE,

        Defendant-Appellant.

No. 340035
Wayne Circuit Court
LC No. 16-010053-01-FH

---

Before: O'BRIEN, P.J., and TUKEL and LETICA, JJ.

PER CURIAM.

Defendant was charged with a series of offenses in three different cases that were consolidated for a jury trial. In total, the jury convicted defendant of two counts of first-degree home invasion, MCL 750.110a(2), three counts of unlawful imprisonment, MCL 750.349b, two

-1-

counts of felonious assault, MCL 750.82, one count of felon in possession of a firearm, MCL 750.224f, one count of aggravated stalking, MCL 750.411i, one count of domestic violence, MCL 750.81(2), and one count of second offense possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b(1). The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to prison terms of 20 to 40 years for each home-invasion conviction, 12 to 20 years for each unlawful imprisonment conviction, four to eight years for each felonious assault conviction, 4 to 10 years for the felon-in-possession conviction, 93 days for the domestic violence conviction, and five years for the felony-firearm conviction.[1] Defendant appeals as of right in each case, and we affirm in each appeal.

## I. FACTS AND PROCEEDINGS

Defendant was charged with a series of offenses involving the following complainants: (1) Dakyra Gaddy, who was defendant's former girlfriend; (2) AT, the two-year-old daughter of Gaddy and defendant; (3) Nakita Williams, who is Gaddy's sister; and (4) LD, the one-year-old daughter of Williams.

In LC No. 010053-01-FH, Gaddy testified at trial that defendant visited her house on August 31, 2016. She would not let him inside, but he kicked open the door, entered the house, and assaulted both Gaddy and AT. Defendant allowed Gaddy to leave to attend a court appointment, but he stayed in the home with AT. Gaddy and AT were reunited later in the day, when Gaddy picked up AT from defendant's workplace. Gaddy did not report this incident to the police until November 2016. Defendant was charged with first-degree home invasion, unlawful imprisonment, assault by strangulation, felonious assault, fourth-degree child abuse, and domestic violence for this incident. The jury convicted defendant of the home invasion, unlawful imprisonment, and domestic violence charges but acquitted him of the remaining charges.

In LC No. 0110054-01-FH, Gaddy testified that defendant repeatedly sent her threatening text messages in September, October, and November 2016. Defendant was charged with aggravated stalking, and the jury convicted defendant of that charge.

In LC No. 16-009962-01-FH, Williams testified that on September 5, 2016, defendant broke into the house where she and Gaddy were living, although Gaddy was not there. Williams said that defendant threatened her and her daughter, LD, with a gun and prevented them from leaving the home. Defendant was charged with first-degree home invasion, two counts of

---

[1] In amended judgments of sentence, the trial court clarified that in LC No. 16-009962-01-FH, the felony-firearm sentence was to be served consecutively to the sentence for home invasion, and the unlawful imprisonment and felonious assault sentences were also to be served consecutively to the home invasion and felony-firearm sentences. In LC No. 16-010053-01-FH, the home invasion sentence was to be consecutive to the sentence for unlawful imprisonment. All other sentences were to be served concurrently with each other and concurrently with the sentences in the other cases.

unlawful imprisonment, two counts of felonious assault, felon in possession of a firearm, and felony-firearm (second offense) for the September 5, 2016 incident. The jury convicted defendant of all counts as charged.

## II. JURY INSTRUCTIONS

Defendant argues that the trial court erred by failing to instruct the jury on an entry-without-permission theory of guilt for the home invasion charges and that this error affected the jury's verdict in LC No. 16-010053-01-FH, because the evidence in that case relied on an entry-without-permission theory to establish defendant's guilt of first-degree home invasion.

Preliminarily, we conclude that this claim of error was waived because defense counsel expressly approved the trial court's jury instructions. The waiver extinguished any error, leaving no error to review. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). Even if the issue had not been waived, however, defendant would not be entitled to relief.

Breaking and entering a dwelling, and entering a dwelling without permission, are two alternative means of satisfying the unlawful entry element of first-degree home invasion. MCL 750.110a(2); *People v Bush*, 315 Mich App 237, 244; 890 NW2d 370 (2016). Defendant was charged with both forms of first-degree home invasion in both LC No. 010053-01-FH (Gaddy's case) and LC No. 16-009962-01-FH (Williams's case). The trial court gave a single instruction on first-degree home invasion, to be applied to both cases, but omitted the entry-without-permission theory of unlawful entry. It instead instructed the jury only on the breaking-and-entering theory for the unlawful entry element.

Although defendant now argues that failure to instruct the jury on the entry-without-permission option likely confused the jury in LC No. 010053-01-FH (Gaddy's case), the legal distinction between breaking and entering and entering without permission was not factually significant in Gaddy's case. The factual basis for the home invasion charge in Gaddy's case was Gaddy's testimony that she told defendant to wait outside her house, but he then kicked in the door and entered her house. This conduct supported the unlawful entry element of first-degree home invasion under both an entry-without-permission theory and a breaking-and-entering theory. In this context, by finding that defendant broke and entered the dwelling, the jury necessarily found that defendant entered without permission. There is no rational basis for concluding that if the jury had been additionally instructed on entry without permission, it would have been less likely to convict him of first-degree home invasion.

Defendant attempts to support his claim of juror confusion by pointing to the fact that the jury inquired about the possibility of considering a lesser charge for the first-degree home invasion count in LC No. 16-010053-01-FH. Although the basis for the jury's inquiry is not known, there is no relationship between that inquiry and the question whether the trial court erred by failing to instruct the jury on an alternative form of first-degree home invasion. Indeed, if anything, the omission of the entry-without-permission alternative inured to defendant's benefit by reducing the available theories under which the jury could have found defendant guilty of first-degree home invasion. Accordingly, even if this issue had not been waived, defendant would not be entitled to relief.

## III. WITHDRAWAL OR SUBSTITUTION OF COUNSEL

Defendant next argues that the trial court violated his right to counsel by denying appointed defense counsel's motion to withdraw and by requiring him to proceed to trial despite a breakdown in the attorney-client relationship. A trial court's decision regarding substitution of counsel is reviewed for an abuse of discretion. *People v Traylor*, 245 Mich App 460, 462; 628 NW2d 120 (2001). "An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes." *People v Daniels*, 311 Mich App 257, 265; 874 NW2d 732 (2015). To the extent that this issue asserts a constitutional question, review is de novo. *Id.*

The federal and state constitutions grant the right to counsel in all criminal prosecutions. US Const, Am VI; Const 1963, art 1, § 20; *People v Marsack,* 231 Mich App 364, 372; 586 NW2d 234 (1998). But while an indigent defendant is guaranteed the right to counsel, a defendant is not necessarily guaranteed the attorney of his or her choice. *Traylor,* 245 Mich App at 462. An indigent defendant "is not entitled to counsel of his choice nor is he entitled to different counsel whenever and for whatever reason dissatisfaction arises with counsel provided for him." *People v Bradley,* 54 Mich App 89, 95; 220 NW2d 305 (1974). However, a defendant is entitled to substitution of defense counsel if discharge of the first attorney is for (1) good cause and (2) does not unreasonably disrupt the judicial process. *People v Buie (On Remand)*, 298 Mich App 50, 67; 825 NW2d 361 (2012). "Good cause may exist when a legitimate difference of opinion develops between a defendant and his appointed counsel as to a fundamental trial tactic, when there is a destruction of communication and a breakdown in the attorney-client relationship, or when counsel shows a lack of diligence or interest." *People v McFall*, 309 Mich App 377, 383; 873 NW2d 112 (2015) (quotation marks and citation omitted). "A mere allegation that a defendant lacks confidence in his or her attorney, unsupported by a substantial reason, does not amount to adequate cause. Likewise, a defendant's general unhappiness with counsel's representation is insufficient." *Id.* (citation and quotation marks omitted). "A difference of opinion regarding "a fundamental trial tactic" could support sufficient good cause, but disagreements over defense strategy, "including what evidence to present and what arguments to make, are matters of trial strategy, and disagreements with regard to trial strategy or professional judgment do not warrant appointment of substitute counsel." *People v Strickland*, 293 Mich App 393, 398; 810 NW2d 660 (2011).

A trial court is obligated to inquire about the truth of a defendant's allegations that there is a dispute which has led to the destruction of communication and a breakdown in the attorney-client relationship. *People v Bass*, 88 Mich App 793, 802; 279 NW2d 551 (1979). "When a defendant asserts that his assigned lawyer is not adequate or diligent or asserts . . . that his lawyer is disinterested, the judge should hear his claim and, if there is a factual dispute, take testimony and state his findings and conclusions." *People v Ginther*, 390 Mich 436; 441-442; 212 NW2d 922 (1973).

In this case, defense counsel moved to withdraw on the first day of trial, alleging a breakdown in the attorney-client relationship. The record discloses that the trial court questioned defendant about his dissatisfaction with counsel. The dissatisfaction involved counsel's failure to file a witness list and file a notice of alibi, but the trial court found that defendant belatedly informed trial counsel of potential witnesses and his claim of alibi. This finding is not clearly erroneous because defendant made contradictory statements regarding when he told trial counsel

about the witnesses. Further, the prosecutor agreed to waive any notice objection, thereby allowing defendant to call his witnesses. Moreover, defendant waited until the first day of trial to express his dissatisfaction with counsel, although defendant had opposed an adjournment of trial two months earlier. Defendant did not demonstrate any dispute regarding a fundamental trial tactic. Defendant's belated request for an adjournment to obtain new counsel would have further delayed his trial, thus disrupting the judicial process.

We also reject defendant's argument that failure to appoint new counsel deprived him of the effective assistance of counsel. To succeed on a claim of ineffective assistance of counsel, defendant must show that (1) counsel's performance did not meet an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's errors, the results of the proceeding would be different. *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012).

Defendant's claims that defense counsel was unprepared for trial are not supported by the record. Defense counsel's extensive cross-examination of the prosecution's witnesses demonstrated his familiarity with the witnesses' testimony and weaknesses in the prosecution's case. Counsel cross-examined Gaddy regarding her pending child protection case, her aggressive conduct toward defendant, and her jealousy of defendant's relationship with the mother of defendant's other child. Although defendant claims that defense counsel erred by failing to obtain the threatening text message evidence sooner, defendant elicited Gaddy's testimony and the officer-in-charge's testimony that Gaddy provided only selected screen shots, instead of submitting her phone for objective forensic analysis. Defense counsel also elicited testimony that the officers did not inspect Gaddy's home to attempt to corroborate her testimony that defendant kicked the door in. He extensively cross-examined Williams regarding her knowledge of guns and her inconsistent descriptions of defendant's gun. He questioned her about the details concerning defendant tying her hands and her prior statements about those acts. He also elicited a witness's admission that Williams did not produce the torn blanket or sheet that allegedly was used to bind her. Defense counsel's performance refutes defendant's claim that he was prejudiced by counsel's alleged failure to timely obtain the text message evidence and that counsel was unprepared for trial.

In support of his argument that defense counsel was unprepared for trial, defendant asserts that counsel was not aware of how many cases had been consolidated or how many peremptory challenges he had available for jury selection. Defendant relies on a discussion between defense counsel and the trial court regarding how many peremptory challenges defendant would be permitted to use in light of the fact that multiple cases had been consolidated for trial. The record does not demonstrate that counsel was actually confused about the number of consolidated cases or the number of available peremptory challenges, but instead attempted to use the consolidations to support an argument that defendant should be awarded additional peremptory challenges. Regardless, any alleged confusion was resolved before trial and did not interfere with counsel's ability to conduct voir dire. Thus, defendant has not demonstrated any prejudice with regard to this matter.

Defendant also argues that he was prejudiced by defense counsel's failure to file a witness list and failure to provide notice of an alibi defense. The trial court found that defendant was responsible for these alleged omissions by failing to cooperate with counsel. Regardless,

defendant cannot demonstrate prejudice because the prosecutor waived objection to the presentation of defendant's unnamed witnesses, including his alibi witness, thereby permitting the witnesses to testify at trial.

Consequently, defendant has failed to prove either prong necessary to show that defense counsel provided ineffective assistance, and his claim necessarily fails.

## IV. EXCLUSION OF DEFENDANT'S MOTHER FROM COURTROOM

Defendant next argues that the trial court erred by excluding his mother, Karen Tillie, from the courtroom, thereby violating his right to a public trial. "Whether the circuit violated defendant's right to a public trial presents a question of constitutional law," which is reviewed de novo. *People v Vaughn*, 491 Mich 642, 649-650; 821 NW2d 288 (2012). But because defendant did not object to the trial court's exclusion of Karen from the courtroom, or otherwise argue that the exclusion violated his right to a public trial, this issue is unpreserved. Unpreserved issues are reviewed for plain error affecting defendant's substantial rights. *People v Pipes*, 475 Mich 267, 274; 715 NW2d 290 (2006).

The record discloses that Karen was the last defense witness to testify. At the end of her testimony, she addressed defendant by saying "I love you, son" in the jury's presence. After the jury was excused, the trial court admonished Karen for making this remark in the jury's presence during defendant's trial. The trial court tried to explain the necessity for her to observe court procedure and protocols. Karen persisted in protesting in defense of her statement, despite warnings from the court. Eventually, the trial court responded by prohibiting her from attending the next day's court proceeding.

MCR 8.116(D)(1) governs access to court proceedings. It provides, in pertinent part:

Except as otherwise provided by statute or court rule, a court may not limit access by the public to a court proceeding unless

(a) a party has filed a written motion that identifies the specific interest to be protected, or the court *sua sponte* has identified a specific interest to be protected, and the court determines that the interest outweighs the right of access;

(b) the denial of access is narrowly tailored to accommodate the interest to be protected, and there is no less restrictive means to adequately and effectively protect the interest; and

(c) the court states on the record the specific reasons for the decision to limit access to the proceeding.

The right to a public trial is guaranteed by the Sixth Amendment of the United States Constitution and article I, § 20 of the Michigan Constitution. *Vaughn*, 491 Mich at 650. The right to a public trial serves the goals of "(1) ensuring a fair trial, (2) reminding the prosecution and court of their responsibility to the accused and the importance of their functions, (3) encouraging witnesses to come forward, and (4) discouraging perjury." *Id*. at 667.

-6-

In *People v Kline*, 197 Mich App 165, 169; 494 NW2d 756 (1992), this Court identified the four requirements for total closure of a trial as set forth in *Waller v Georgia*, 467 US 39, 45; 104 S Ct 2210; 81 L Ed 2d 31 (1984):

(1) The party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, (2) the closure must be no broader than necessary to protect that interest, (3) the trial court must consider reasonable alternatives to closing the proceeding, and (4) it must make findings adequate to support the closure.

In *Presley v Georgia*, 558 US 209; 130 S Ct 721; 175 L Ed 2d 675 (2010), the defendant's uncle was seated in the courtroom before jury voir dire began. The court instructed the man to leave the courtroom and leave that floor of the courthouse, but advised him that he could return when jury selection was completed. When the defendant objected, the trial court replied that 42 prospective jurors were about to enter the courtroom and occupy the "audience" area of the courtroom. The trial court stated that the defendant's uncle "cannot sit and intermingle with members of the jury panel." *Id*. at 210. On appeal, the defendant presented evidence "that 14 prospective jurors could have fit in the jury box and the remaining 28 could have fit entirely on one side of the courtroom, leaving adequate room for the public." *Id*. at 210-211. The Supreme Court held that the trial court violated the defendant's right to a public trial by failing to consider alternatives to closure. *Id*. at 214-215. The defendant also argued that the trial court erred by failing to identify "any overriding interest likely to be prejudiced absent the closure of *voir dire*." The Supreme Court noted that "broad concerns" about the "generic risk of jurors overhearing prejudicial remarks, unsubstantiated by any specific threat or incident," were not sufficient, because these concerns are present in all criminal trials. *Id*. at 215. However, the Court declined to rule on this claim of error "because even assuming, *arguendo*, that the trial court had an overriding interest in closing *voir dire*, it was still incumbent upon it to consider all reasonable alternatives to closure." *Id*. at 216. The Supreme Court reversed the defendant's convictions. *Id*.

In *Vaughn*, 491 Mich 642, the trial court closed the courtroom to the public during jury voir dire. The trial court did not provide a reason for the disclosure, and the defendant did not object. *Id*. at 647. Our Supreme Court addressed whether the right to a public trial could be forfeited or waived by the defendant's failure to timely assert his right to a public trial. *Id*. at 653. After concluding that the defendant was required to satisfy the plain error standard of review in regard to his unpreserved claim of constitutional error, the Supreme Court held that the defendant had satisfied the first two prongs of this analysis, i.e., that the trial court erred by closing the courtroom without identifying the "overriding interest that is likely to be prejudiced" if the courtroom remained open, and that this was plain, clear, and obvious error. *Id*. at 665. With respect to the third prong, the Court observed that violation of the right to public trial was a structural error and "intrinsically harmful, without regard to [its] effect on the outcome . . . ." *Id*. at 666. However, the Court emphasized that under the plain-error standard, the defendant should be granted a new trial only if the error "resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id*. at 666-667 (quotation marks and citation omitted). The Court concluded that the closure did not seriously affect the fairness of the proceedings because both attorneys had

conducted a "vigorous voir dire process," and each party "expressed satisfaction with the ultimate jury chosen." *Id*. at 668.

In *United States v Sherlock*, 962 F2d 1349 (CA 9, 1989), the defendants appealed their convictions of assault with intent to commit rape on the ground that the trial court denied them their right to a public trial when it excluded their family members from the courtroom during the complainant's testimony. *Id*. at 1353. The court reviewed the values underlying the right to a public trial, but stated that this right "is not absolute and must give way in some cases to other interests essential to the fair administration of justice." *Id*. at 1356. These interests include the maintenance of order in the courtroom. *Id*. The court stated that the temporary exclusion of the defendants' families during one witness's testimony was not a "true 'closure' of proceedings . . . ." *Id*. at 1357. Rather, the trial court properly balanced the rights of the defendants and the protection of the victims. *Id*. The court concluded:

> The right to a public trial has always been interpreted as being subject to the trial judge's power to keep order in the courtroom. Were this not so a public trial might mean no trial at all at the option of the defendant and his sympathizers. Trial judges must control the courtroom and provide a fair forum for the defendant in the search for truth. [*Id*. at 1357-1358 (quotation marks and citations omitted).]

The court also found that the scope of the partial closure "was narrowly tailored to protect [the witness] and elicit her information" because the excluded persons were readmitted when her testimony was complete; the jury was unaware of the limited closure order; other persons, including members of the press, were permitted to remain; and the transcript of the trial became a public record. *Id*. at 1358. The court further concluded that the trial court made factual findings in support of the closure, and the court considered reasonable alternatives to closure. *Id*. at 1358-1359.

In *United States v Perry*, 375 US App DC 238; 479 F3d 885 (2007), the trial court removed the defendant's eight-year-old son from the courtroom based on reports that the defendant had instructed his wife to bring the boy to court to evoke the jurors' sympathy. *Id*. at 241. On appeal, the DC Circuit held that the closing was "trivial" because it did not implicate the values served by the Sixth Amendment. *Id*. at 243-244. The court stated:

> Using the triviality standard, we believe the district court's action did not violate the Sixth Amendment. Perry's son was the only person excluded from the proceedings and an eight-year-old's presence in the courtroom would neither "ensure that judge and prosecutor carry out their duties responsibly" nor "discourage[] perjury." *Waller*, 467 US at 46; 104 SC 2210. Nor would the child's attendance "encourage [a] witness[] to come forward." *Id*. Perry's trial remained open to the public—and specifically to his wife—throughout. [*Perry*, 375 US App DC at 243-244.]

In this case, Karen's exclusion from the courtroom before the testimony of the prosecutor's rebuttal witness did not implicate the goals underlying the right to a public trial. See *Vaughn*, 491 Mich at 667. The court excluded Karen only because she had become

disruptive. This was not a true closure of the courtroom. See *Sherlock*, 962 F2d at 1357. Moreover, the removal of this one individual at this late stage in the trial did not prejudice defendant's right to a fair trial. The proceedings remained open to every other member of the public. Karen's attendance was not necessary to remind the prosecutor and the court of their responsibilities. The only remaining witness was the prosecutor's rebuttal witness, a police officer, who was aware of his obligation to come forward and to testify truthfully. Accordingly, even if Karen's removal can be deemed a partial closure, the closure was trivial. See *Perry*, 375 US App DC at 243-244. This trivial closure was balanced by the trial court's interest in maintaining order. See *Sherlock*, 962 F2d at 1353. The trial court resorted to the exclusion of Karen only after it unsuccessfully attempted to ensure that she would behave accordingly. As a result, there was no Sixth Amendment violation.

With respect to MCR 8.116(D), the trial court sua sponte determined that the interest of maintaining order outweighed the right of access to a disorderly spectator. MCR 8.116(D)(1)(a). Denying Karen access to the trial was "narrowly tailored to accommodate" that interest. MCR 8.116(D)(1)(b). The trial court explained its reasons for removing Karen, namely "to make sure that the trial is run in a fair and efficient manner and to make sure that there is not improper contact between the jurors and people unrelated to the case." Thus, the court complied with the mandates of MCR 8.116(D)(1)(c).

## V. SPEEDY TRIAL

Defendant argues that the trial court violated his right to a speedy trial when it granted the prosecution's motion to adjourn trial to accommodate the officer-in-charge's travel plans. "A defendant must make a formal demand on the record to preserve a speedy trial issue for appeal." *People v Cain*, 238 Mich App 95, 111; 605 NW2d 28 (1999) (quotation marks and citation omitted). Defendant failed to make the requisite demand. Therefore, this issue is unpreserved. "Whether defendant was denied his right to a speedy trial is an issue of constitutional law," which is reviewed de novo by this Court. *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006). But where an issue is unpreserved, the defendant has the burden of establishing a plain error affecting his substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

"Both the United States Constitution and the Michigan Constitution guarantee a criminal defendant the right to a speedy trial." *Williams*, 475 Mich at 261, citing US Const, Am VI; Const 1963, art 1, § 20; *People v Rivera*, 301 Mich App 188, 193; 835 NW2d 464 (2013); MCL 768.1 (codifying the right to a speedy trial); MCR 6.004(A). "In determining whether a defendant has been denied the right to a speedy trial, [courts] balance the following four factors: (1) the length of the delay, (2) the reason for delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." *Williams*, 475 Mich at 261-262 (citation omitted); see also *Rivera*, 301 Mich App at 193.

The length of the delay does not weigh in defendant's favor. In this case, the right to a speedy trial attached when defendant was arrested. See *Williams*, 475 Mich at 261. Defendant was tried less than eight months after his arrest, which was 2½ months after his original trial date. We agree that the reason for the delay—to accommodate the officer-in-charge's travel plans—is not particularly compelling, especially given his delay in informing the prosecutor.

However, defendant failed to assert his right to a speedy trial when opposing the prosecutor's motion to adjourn, and a defendant's failure to promptly assert his right to a speedy trial weighs against his subsequent claim that he was denied the right. *People v Rosengren*, 159 Mich App 492, 508; 407 NW2d 391 (1987).

The fourth factor is prejudice to the defendant. *Williams*, 471 Mich at 262. "When the delay is less than 18 months, the defendant must prove that he or she suffered prejudice." *Rivera*, 301 Mich App at 193. Here, a period of less than eight months elapsed between defendant's arrest and trial. Defendant must therefore prove prejudice. Defendant argues that the trial court's grant of an adjournment in April 2017 made the court disinclined to grant a second adjournment, for defendant's benefit, in June 2017. However, the heart of this argument does not implicate the right to a speedy trial because defendant's complaint is not that the trial was held too late, but that it was held *too soon*. Defendant's argument is not persuasive because if the trial court had denied the prosecutor's motion for an adjournment, trial would have been held two months earlier, yet defendant argues that he was prejudiced by having to proceed to trial in June, when counsel allegedly was unprepared.[2] Consequently, defendant fails to demonstrate prejudice based on the delay of trial from April to June.

After balancing the relevant considerations, we hold that defendant has failed to prove the existence of any plain error that affected his substantial rights.

## VI. DEFENDANT'S STANDARD 4 BRIEF

Defendant raises additional issues in a pro se supplemental brief, filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, but none of them has any merit.

## A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant argues that both his trial attorney and appointed appellate counsel were ineffective. Because defendant did not raise these claims in a motion for a new trial or for an evidentiary hearing under *Ginther*, 390 Mich at 443, our review of defendant's claims is limited to errors apparent on the record. *Lockett*, 295 Mich App at 186.

"Effective assistance of counsel is presumed, and the defendant bears the heavy burden of proving otherwise." *People v Seals*, 285 Mich App 1, 17; 776 NW2d 314 (2009) (quotation marks and citation omitted). To succeed on a claim of ineffective assistance of counsel, defendant must show that (1) counsel's performance did not meet an objective standard of reasonableness under prevailing professional norms and (2) there is a reasonable probability that, but for counsel's errors, the results of the proceeding would be different. *Lockett*, 295 Mich App at 187. "The test for ineffective assistance of appellate counsel is the same as that for trial counsel." *People v Pratt*, 254 Mich App 425, 430; 656 NW2d 866 (2002). "In examining whether defense counsel's performance fell below an objective standard of reasonableness, a

---

[2] As discussed previously, the record does not support defendant's argument that defense counsel was unprepared for trial.

defendant must overcome the strong presumption that counsel's performance was born from a sound trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). "[T]his Court will not second-guess defense counsel's judgment on matters of trial strategy." *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011). "The fact that defense counsel's strategy may not have worked does not constitute ineffective assistance of counsel." *People v Stewart (On Remand)*, 219 Mich App 38, 42; 555 NW2d 715 (1996).

Defendant first asserts that appellate counsel was ineffective for failing to raise various claims of error and instead leaving it to defendant to raise the claims in a Standard 4 brief. We disagree. "An appellate attorney's failure to raise an issue may result in counsel's performance falling below an objective standard of reasonableness if that error is sufficiently egregious and prejudicial." *People v Reed*, 198 Mich App 639, 646; 499 NW2d 441 (1993), aff'd 449 Mich 375 (1995). "However, appellate counsel's failure to raise every conceivable issue does not constitute ineffective assistance of counsel." *Id*. "The process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Id*. at 648 n 8. As analyzed later in this opinion, none of the issues raised in defendant's Standard 4 brief has any merit. Thus, there is no basis for concluding that appellate counsel was ineffective for failing to raise these additional issues or that counsel's failure to raise them could have prejudiced defendant.

Defendant also argues that trial counsel was ineffective for failing to investigate and call four witnesses, including an alibi witness. "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy . . . ." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). However, "[t]he failure to make an adequate investigation is ineffective assistance of counsel if it undermines confidence in the trial court's outcome." *People v Grant*, 470 Mich 477, 493; 684 NW2d 686 (2004). And the failure to present certain evidence or to call a witness constitutes ineffective assistance of counsel only if it deprives the defendant of a substantial defense. *People v Dunigan*, 299 Mich App 579, 589; 831 NW2d 243 (2013). A defense is substantial if it might have made a difference in the outcome of the trial. *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009).

The extent of counsel's investigation is not a matter of record. Although defendant complained on the first day of trial that defense counsel failed to file a witness list or a notice of alibi, the defense was permitted to and in fact called witnesses at trial, including an alibi witness. Defendant does not identify any other witness who he believes should have been called, and he does not indicate what testimony any additional witnesses could have provided if called. A defendant bears the burden of establishing the factual predicate for his claim of ineffective assistance. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999). Because defendant does not identify any witnesses who were not called and does not identify the substance of any testimony that could have been provided, he has not met his burden of establishing the factual predicate for his claim of ineffective assistance of counsel. Therefore, this claim cannot be sustained.

Defendant claims that trial counsel was ineffective for failing to impeach Williams with inconsistencies between her trial testimony and her prior police statement and preliminary examination testimony. He also complains that counsel failed to impeach Williams with her prior commission of a crime involving theft or dishonesty. "The questioning of witnesses is presumed to be a matter of trial strategy." *People v Petri*, 279 Mich App 407, 413; 760 NW2d

882 (2008); see also *People v McFadden*, 159 Mich App 796, 800; 407 NW2d 78 (1987). The record does not support defendant's assertions. On the contrary, the record discloses that defense counsel questioned Williams in detail regarding various discrepancies between her trial testimony and her preliminary examination testimony or signed statement to the police. That examination included matters such as her description of defendant's gun, whether defendant tied her hands before or after he took her to the basement, and whether defendant untied her hands after her sister left. Counsel further challenged Williams regarding whether she saw defendant outside the door before he entered the flat, or whether she woke up and found defendant in front of her. Counsel also suggested that her explanation about "leaking fluid" and going into labor during the incident was not credible where she did not give birth until three months later. In addition, counsel questioned Williams regarding whether she had been convicted of a crime involving theft or dishonesty in the past 10 years, including, specifically, uttering and publishing. On appeal, defendant does not identify any other impeachment matter that counsel failed to pursue.

Defendant also complains that trial counsel did not inform the trial court that he was not prepared for trial when he moved to withdraw on the first day of trial. He further argues that the trial court did not allow him to explain the breakdown in communication between himself and his attorney. Again, the record does not support these claims. Defense counsel stated that he was "prepared as I can be but I don't think I'm prepared to go to trial," but on further questioning by the court explained that he was prepared to try the case, just not in the manner that defendant wanted. Counsel's subsequent performance established that he was indeed prepared for trial. The trial court also allowed defendant to explain his dissatisfaction with defense counsel, but determined that defendant failed to show good cause for substitution of counsel. In light of this record, this ineffective-assistance claim is without merit.

## B. PROSECUTORIAL MISCONDUCT

To preserve a claim of prosecutorial misconduct, a defendant must contemporaneously object and request a curative instruction. *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Defendant raises several claims of prosecutorial misconduct but failed to object to the alleged instances. Therefore, these claims are not preserved.

"Allegations of prosecutorial misconduct are considered on a case-by-case basis, and the reviewing court must consider the prosecutor's remarks in context." *Id.* at 475. "The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial." *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008). However, "[u]npreserved claims of prosecutorial misconduct are reviewed for plain error affecting substantial rights." *People v Brown*, 294 Mich App 377, 382; 811 NW2d 531 (2011).

Defendant argues that the prosecutor improperly presented evidence from a separate case in which defendant was charged with a series of offenses arising from his arrest, including felon in possession of a firearm, resisting arrest, felony-firearm, and carrying a concealed weapon. Although the trial court denied the prosecutor's motion to join this fourth case for trial along with the other three, it ruled that the evidence of defendant's conduct during his arrest and evidence regarding the firearm and ammunition that were recovered from defendant at the time of his arrest could be admitted at trial. "A finding of prosecutorial misconduct may not be based

on a prosecutor's good-faith effort to admit evidence." *People v Dobek*, 274 Mich App 58, 76; 732 NW2d 546 (2007). Defendant does not offer any explanation for why testimony relating to his arrest was improperly admitted, and he does not address why the prosecutor's efforts to have such evidence introduced, which the trial court agreed was admissible, was made in bad faith. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give only cursory treatment with little or no citation of supporting authority." *People v Henry*, 315 Mich App 130, 148; 889 NW2d 1 (2016). Accordingly, defendant has not met his burden of showing plain error.

Defendant avers that the prosecutor knowingly introduced false testimony by Williams. The factual basis for this claim is that Williams gave inconsistent descriptions of the gun, despite her testimony that she was a licensed gun owner and knowledgeable about guns. Defendant states that the prosecutor withheld evidence about Williams's inconsistent statements about the gun. A prosecutor may not knowingly use false testimony to obtain a conviction. *People v Smith*, 498 Mich 466, 475-476; 870 NW2d 299 (2015). "[A] conviction obtained through the knowing use of perjured testimony offends a defendant's due process protections guaranteed under the Fourteenth Amendment." *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009). A conviction must be set aside if there is any reasonable likelihood that the knowingly false testimony could have affected the judgment of the jury. *Smith*, 498 Mich at 476. But conflicts between a witness's testimony and statements the witness gave to the police do not constitute misconduct where there is no evidence that the prosecutor attempted to conceal the contradictions and the defense is permitted an opportunity to impeach the witness with the inconsistent statements. See *People v Parker*, 230 Mich App 677, 690; 584 NW2d 753 (1998). In this case, defendant has not provided any evidence to factually support his claim that the prosecutor failed to disclose evidence. Further, the record discloses that defense counsel was aware of Williams's prior inconsistent statements because counsel extensively cross-examined her and a police witness regarding discrepancies between Williams's testimony and her prior statements. Accordingly, there is no merit to this issue.

Defendant also claims that the prosecution violated its duty to produce exculpatory evidence by failing to produce the body cam video of his arrest. The prosecutor is required to disclose material evidence favorable to the defense. *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963); *People v Fox (After Remand)*, 232 Mich App 541, 549; 591 NW2d 384 (1998). To establish a *Brady* violation, a defendant must show that (1) the prosecution suppressed evidence; (2) the evidence was favorable to the accused; and (3) viewed in its totality, the evidence was material. *People v Chenault*, 495 Mich 142, 155; 845 NW2d 731 (2014). However, if the government fails to preserve evidence, the exculpatory value of which is indeterminate or only "potentially useful," the defendant has the burden of proving that the government acted in bad faith in failing to preserve the evidence. *Arizona v Youngblood*, 488 US 51, 57-58; 109 S Ct 333; 102 L Ed 2d 281 (1988); *People v Johnson*, 197 Mich App 362, 365; 494 NW2d 873 (1992). In this case, defendant has not provided any proof that body cam videos actually existed, and in fact one witness expressly testified that the body camera was not working when defendant was arrested. Therefore, this claim of prosecutorial misconduct is also without merit.

In sum, the record does not support defendant's multiple claims of prosecutorial misconduct.

## C. DEFENDANT'S REMAINING ISSUES

Defendant's remaining claims of error require only brief attention because they are not supported by the record. Specifically, there is no record support for defendant's claim that jurors communicated with complainant Nikita Williams during a lunch break. The only record instance of contact between a witness and the jurors occurred at the end of the first day of trial, when defendant informed the trial court that Williams stood near the door as jurors exited, and smiled and nodded at them. However, defense counsel informed the court that he was not requesting any remedy for this apparently innocuous and isolated incident. Accordingly, we reject defendant's claim that he was denied a fair trial because of juror misconduct.

Defendant also claims that he was denied his right to a speedy trial. For the reasons discussed earlier, there is no merit to defendant's reiterated claim.

We also reject defendant's claim that trial counsel was ineffective for failing to inform defendant that the prosecutor had made a more favorable plea offer than an offer that defendant rejected earlier. Although the record discloses that the prosecutor contemplated making a more favorable plea offer, there is no evidence that a more favorable plea offer ever was made. Defendant has failed to establish the factual predicate for this claim. *Hoag*, 460 Mich at 6.

Defendant also argues that the trial court pierced the veil of judicial impartiality by stating in the jury's presence that a gun shown to the jury had to be the gun that defendant used in the offense against Williams. To preserve a claim of judicial misconduct, a defendant must object to the trial court's conduct on that basis at trial. *People v Sardy*, 216 Mich App 111, 117-118; 549 NW2d 23 (1996). Defendant failed to object to the trial court's conduct, leaving this issue unpreserved. We review unpreserved issues for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764. Defendant fails to provide a citation to the record in support of this claim, and we have not found the alleged statement in our review of the record. The record does disclose that during a discussion between the court and the attorneys outside the presence of the jury, the court remarked, "My thought was that she testified to a revolver and a revolver was found in the backpack that he was caught with." However, because this statement was made outside the jury's presence, it could not have pierced the veil of judicial impartiality. *People v Stevens*, 498 Mich 162, 164; 869 NW2d 233 (2015).

Affirmed.

/s/ Colleen A. O'Brien
/s/ Jonathan Tukel
/s/ Anica Letica

-14-